UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 20-11231-GAO

UNITED STATES OF AMERICA, et al.,
*ex rel*. REYNALDO SOLANO and NEALS MAXILIN,
Plaintiffs,

v.

BARTON & ASSOCIATES, INC., MEDTECH WORLDWIDE, INC., REALTIME
PHYSICIANS, LLC, OCENTURE, LLC, and CARELUMINA, LLC,
Defendants.

OPINION AND ORDER
March 29, 2024

O'TOOLE, D.J.

This is a *qui tam* action brought in 2020 by Relators Reynaldo Solano and Neals Maxilin

on behalf of the United States and several States pursuant to the False Claims Act (the "FCA") and

analogous state statutes. The relators allege that Barton & Associates, Inc. knowingly either

provided or contracted with providers to furnish unnecessary medical services and equipment to

patients eligible for Medicare or other government-funded health plans. The United States declined

to intervene, and the defendant Barton subsequently moved to dismiss.

## I.        Overview of Allegations

The complaint alleges that Barton provides "locum tenens" staffing services, assigning

physicians, physician assistants, dentists, and other health care workers to short- and long-term

positions at hospitals and health care organizations across the country. The relators claim that

Barton physicians knowingly prescribed unnecessary medical services and equipment. The

relators' complaint alleges that Barton recruits individuals or entities to obtain contact information

of patients eligible for Medicare or other government-funded health plans.[1] Barton then encourages the recruited client to establish a call center to solicit eligible patients for services such as genetic cancer screening, durable medical equipment, pain creams, anti-fungal creams, and hydrotherapy foot soaks. Once a Medicare-eligible patient is identified, the recruited client can forward the patient's information to Barton, which then assigns the matter to one of its own physicians to prescribe the service or product. The physician must review the request, but almost all requests are approved. Barton then collects an assessment fee of forty dollars for each item or service, while the recruited client obtains reimbursement from Medicare.

The complaint further alleges that Medtech Worldwide Inc. ("Medtech") and RealTime Physicians, LLC ("RealTime"), two operators of a network of virtual medical clinics, were among the clients Barton recruited and for whom Barton physicians provided unnecessary prescriptions. The recruited clients obtained "tens of thousands" of dollars in prescriptions every month for genetic testing, durable medical equipment, and pain cream prescriptions from Barton physicians and then sought reimbursement for those prescriptions. (Compl. ¶ 60 (dkt. no. 1).) For example, on January 10, 2019, Barton was asked to generate a prescription for genetic testing for a patient. A Barton-contracted physician signed the prescription without ever meeting, seeing, or communicating with the patient. Similarly, CareLumina LLC, a telehealth company, and its owner, Ocenture LLC, also contracted with Barton to obtain prescriptions for unnecessary services and equipment. The two companies offered no-cost testing for cancer markers and contracted with Barton to obtain signed prescriptions for the tests so that they could bill Medicare. They performed between 8,000 and 10,000 cancer-screening tests per month.

---

[1] For the sake of brevity, this order hereinafter will refer only to Medicare, but the allegations in the complaint typically refer to "Medicare or other government funded health plans."

**II.**    **Discussion**

The relators rely on many of the provisions of the FCA to target allegedly false claims, including the presentation of false claims under 31 U.S.C. § 3729(a)(1)(A) (Count I), making or using a false record or statement to cause claims to be paid under § 3729(a)(1)(B) (Count II), conspiracy to commit a violation under § 3729(a)(1)(C) (Count III), knowingly delivering less than all of the government's property in Barton's possession under § 3729(a)(1)(D) (Count IV), and knowingly concealing or improperly avoiding an obligation to pay money to the government under § 3729(a)(1)(G) (Count V). They further allege violations of the California, Florida, Illinois, Massachusetts, Michigan, New Jersey, New York, and Texas state false claims acts (Count VI through XIII).

A.    The False Claims Act

The FCA penalizes those who present, or cause to be presented, "false or fraudulent claim[s] for payment or approval" to the federal government. 31 U.S.C. § 3729(a)(1). Thus, fraud under the FCA has two components: the defendant must submit or cause the submission of a claim for payment to the government, and the claim for payment must itself be false or fraudulent. United States ex rel. Ge v. Takeda Pharm. Co., 737 F.3d 116, 124 (1st Cir. 2013) ("Because FCA liability attaches only to false *claims*, merely alleging facts related to a defendant's alleged *misconduct* is not enough. Rather, a complaint based on [the FCA] must sufficiently establish that false claims were submitted for government payment as a result of the defendant's alleged misconduct.") (internal citations omitted).

Federal Rule of Civil Procedure 9(b), meanwhile, requires that a complaint state these components with "particularity," meaning relators . . . must allege the "who, what, when, where, and how of the alleged fraud." Id. at 123 (internal citation and quotation marks omitted). Still, we have repeatedly emphasized that there is no "checklist of mandatory requirements" that each allegation in a complaint must meet to satisfy Rule 9(b), United States ex rel. Karvelas v. Melrose–Wakefield Hosp., 360 F.3d 220, 233 (1st Cir. 2004), abrogated on other grounds by U.S. ex rel. Gagne v. City of Worcester, 565 F.3d 40, 46 n.7 (1st Cir. 2009), and that a "somewhat 'more flexible' standard" applies in qui tam actions where the defendant is alleged to have induced third parties to file false claims, United States ex. rel. Kelly v. Novartis Pharms. Corp., 827 F.3d 5, 13 (1st Cir. 2016) (quoting United States ex rel. Duxbury v. Ortho Biotech Prod., L.P., 579 F.3d 29–30 (1st Cir. 2009)).

Hagerty ex rel. United States v. Cyberonics, Inc., 844 F.3d 26, 31 (1st Cir. 2016). As explained in Hagerty, there is a "distinction between a qui tam action alleging that the defendant made false claims to the government," and a case, where "the defendant induced *third parties* to file false claims with the government," what is at issue in this case. Duxbury, 579 F.3d at 29.

Relators alleging inducement "can meet this more accommodating standard by 'providing factual or statistical evidence to strengthen the inference of fraud *beyond possibility* without necessarily providing details as to each false claim.'" Hagerty, 844 F.3d at 31 (quoting Ge, 737 F.3d at 123–24 (internal citation marks omitted).) In these indirect claim cases, a complaint that does not provide sufficient facts regarding false claims "may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." Duxbury, 579 F.3d at 29 (quoting United States ex rel. Grubbs v. Kanneganti, 565 F.3d 180, 190 (5th Cir. 2009)). The evidence often includes the "'specific medical providers who allegedly submitted false claims,' the 'rough time periods, locations, and amounts of the claims,' and 'the specific government programs to which the claims were made.'" Kelly, 827 F.3d at 13 (quoting Ge, 737 F.3d at 121, 124).

Here, while the relators allege a scheme involving misconduct by various actors, they do so at too high a level of generality. Beyond a general outline of a fraudulent scheme, the complaint is minimal as to any details about specific false claims and lacks reliable indicia that lead to a strong inference that claims were actually submitted in this manner. See Duxbury, 579 F.3d at 29. The purported clients are identified, but there are no rough time periods, locations, or amounts of fraudulently submitted claims, nor is there any identification of the specific government programs to which such claims were made other than the boilerplate references to Medicare and other governmental programs. See Kelly, 827 F.3d at 13. Indeed, the complaint contains only one

4

example of the scheme in action. After a client's request on January 10, 2019, a Barton-contracted physician signed a prescription for a patient without having met, seen, or communicated with the patient. But the complaint does not allege that the patient was enrolled in Medicare, that Barton received any assessment fee or kickback for approving the prescription, that the prescription was medically unnecessary, or that the recruited client submitted a claim for the patient to Medicare.

Potentially to bolster the allegations with "factual or statistical evidence to strengthen the inference of fraud *beyond possibility* 'without necessarily providing details as to each false claim,'" see Ge, 737 F.3d at 123–24, the relators allege some numerical totals as to dollars and the number of prescriptions. However, the "factual and statistical evidence struggle[] to connect these allegations with the submission of any false claims to government programs." See Hagerty, 844 F.3d at 32. The relators allege, for instance, that two of the purported clients—Medtech and RealTime—"were obtaining 'tens of thousands' of dollars in prescriptions every month for genetic testing, durable medical equipment and pain cream prescriptions for Medicare-eligible patients from Barton physicians and then seeking reimbursements." (Compl. ¶ 60.) However, the relators do not allege that all prescriptions were written without a doctor-patient relationship, that they were medically unnecessary, that the patients were enrolled in (as opposed to eligible for) Medicare, or that the claims to Medicare were submitted for unnecessary prescriptions.[2] Similarly, the complaint alleges that Ocenture and CareLumina conducted 8,000 to 10,000 cancer-screening tests a month. There is a broad allegation that they "dealt directly with Barton physicians to sign the orders for the cancer screening tests," (Compl. ¶ 73), but the complaint does not allege that those thousands of tests were conducted based on prescriptions by Barton physicians, that they

---

[2] Indeed, those two clients allegedly began falsifying patient records and photoshopping Barton physician signatures without obtaining prescriptions from the physicians, significantly undermining any value of the statistical evidence relating to total amount of prescriptions.

were made without a patient-client relationships or were medically unnecessary, that they were for patients enrolled in Medicare, or that claims for that volume of tests were submitted to Medicare.

It may not be "irrational to infer that, given [the allegations], some false claims for . . . reimbursement were submitted to the government." See Kelly, 827 F.3d at 15 (citation omitted). But allegations which merely give raise to "speculation as to whether the alleged scheme caused the filing of false claims with the government," see Duxbury, 579 F.3d at 31, are insufficient under Rule 9(b). Because the relators have only raised facts to suggest that fraud was possible, the FCA claims are dismissed.[3]

> B.   State False Claims Acts

"Rule 9(b)'s heightened pleading standard generally applies to state law fraud claims brought in federal court." Lawton ex rel. United States v. Takeda Pharm. Co., Ltd., 842 F.3d 125, 132 (1st Cir. 2016). Additionally, "[i]n order to satisfy Rule 9(b), [relators] must allege some specificity with respect to each asserted state and cannot rely upon generalized pleadings." U.S. ex rel. Nowak v. Medtronic, Inc., 806 F. Supp. 2d 310, 357 (D. Mass. 2011).

Here, the relators fail to identify with any specificity the state law claims. Rather, they assert general propositions regarding false claims, repeating and incorporating by reference the previous allegations. Where those claims fail, the analogous state law claims suffer the same fate.

---

[3] Other problems plague the complaint as well. For instance, the relators assert violations of the FCA under both conversion and reverse false claims theories, see 31 U.S.C. § 3729(a)(1)(D) & (G), but only repeat and incorporate earlier allegations for the additional theories of liability. Their contentions lack any facts as to the receipt of government funds or property or failure to return such funds or property, or that Barton had any obligation to pay the government or that it made a false statement to conceal or avoid such obligation.

### III.   <u>Conclusion</u>

For the foregoing reasons, Barton's Motion to Dismiss (dkt. no. 40) is GRANTED.

It is SO ORDERED.

<u>/s/ George A. O'Toole, Jr.</u>
United States District Judge
